UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YAVON MARTIN and ELIZABETH MARTINEZ,

    Plaintiffs,

– against –

J.C. PENNEY CORPORATION, INC.,
YESENNIA BOLANOS,
KENNETH FINGERMAN,
JOHN PENA, and DAVID RODRIGUEZ,

    Defendants.

MEMORANDUM AND ORDER

13-CV-1985

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 10 2014 ★
BROOKLYN OFFICE

**Appearances:**

Plaintiffs:    Anthony Patrick Malecki
Ayanna Tamara Blake
Daniela Elizabeth Nanau
Michael J. Borrelli
Alexander T. Coleman
Law Offices of Borrelli & Associates
1010 Northern Blvd Ste 328
Great Neck, NY 11021

Defendant:    Steven F. Goldstein
Gina M. Arnedos
Steven F. Goldstein, LLP
One Old Country Road, Suite 370
Carle Place, NY 11514

**JACK B. WEINSTEIN, Senior United States District Judge:**

## I.   Introduction

Plaintiffs Yavon Martin and Elizabeth Martinez assert claims against defendants J.C. Penney Corporation, Inc. ("J.C. Penney"), Yesennia Bolanos, Kenneth Fingerman, John Pena, and David Rodriguez for violations of 42 U.S.C. § 1981, New York State Human Rights Law,

1



the New York City Administrative Code, and state tort law resulting from the detention and questioning of plaintiffs on suspicion of shoplifting.

Defendants have moved for summary judgment with respect to plaintiffs' state and federal discrimination claims on the following grounds: (1) plaintiffs were not treated differently than other J.C. Penney shoppers, (2) plaintiffs were not prevented from purchasing merchandise, (3) the court lacks jurisdiction over the NYHRL and NYCHRL claims, and (4) there is no proof of discrimination. The motion does not address plaintiffs' state law tort claims.

Because there are questions of material fact, defendants' motion for summary judgment on plaintiffs' discrimination claims is denied. Trial will commence on November 3, 2014. *See* Scheduling Order, June 9, 2014.

## II. Facts

Plaintiffs' discrimination claims stem from an incident at a J.C. Penney store in Queens, New York on October 22, 2012.

Plaintiffs are "dark-skinned females who dress in stereotypically male attire." Pl.'s Rule 56.1(b) Counter Statement ("Pl.'s Rule 56.1(b)") ¶ 110, ECF No. 40. At the time of the incident in question, Martin held herself out as a male and is currently investigating the surgical process of transitioning from female to male. *Id.* ¶¶ 9, 11; *see also* Def.'s Rule 56.1(b) Statement ("Def.'s Rule 56.1(b)").

It is undisputed that both plaintiffs were in defendants' J.C. Penney store on October 22, 2012, dressed in masculine attire. Compl. ¶ 15; Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") 1, ECF No. 34.

Plaintiffs arrived at the J.C. Penney store around 3:00 or 3:30 p.m. *See* Pl.'s Rule 56.1(b) ¶ 14; Def.'s Rule 56.1(b) ¶ 14. They spent fifteen to twenty minutes shopping in the men's

department, before taking selected items into the fitting room in the men's department. *See* Pl.'s Rule 56.1(b) ¶ 16, 46, 49; Def.'s Rule 56.1(b) ¶ 16-20.

Shortly after plaintiffs entered the store, individual defendants Pena and Bolanos, J.C. Penney loss prevention specialists, began watching them as they shopped for merchandise. Pl.'s Rule 56.1(b) ¶ 61. Pena assumed plaintiffs were male and Bolanos admitted some confusion as to their genders. *Id.* ¶¶ 62, 105. Both Pena and Bolanos testified that they made the determination that plaintiffs were not white, but were unable to identify their races. *Id.* ¶¶ 68, 69, 104.

Plaintiffs were observed picking up between four and six items of merchandise prior to entering the fitting rooms. *Id.* ¶ 111. Pena and Bolanos testified that they created a list of the merchandise plaintiffs brought into the fitting room with them. *Id.* ¶ 113. Pena contacted the third loss prevention specialist, defendant Rodriguez, requesting assistance with two "males" who entered the fitting room. *Id.* ¶ 115. Pena followed plaintiffs into the fitting room area, while Bolanos watched from the camera room. *Id.* ¶ 114.

Plaintiffs exited the fitting rooms, leaving some merchandise with the attendant, including at least one shirt. *Id.* ¶ 116. Pena searched the fitting rooms and testified to finding price tags left behind. *Id.* ¶ 117. None of the defendants could recall what merchandise the price tags matched or whether they created a record of the tags that were recovered. *Id.* While Pena searched the fitting rooms, Bolanos watched plaintiffs exit the fitting rooms with approximately three items on a surveillance camera. *Id.* ¶ 118.

Plaintiffs testified that they discarded several items on shelves and racks prior to exiting the store. Pena recovered some of these items. *Id.* ¶¶ 119-122. Defendants Pena and Bolanos

3

determined that more than one item of merchandise was missing and, despite being unable to identify the specific missing item or items, made a determination to detain plaintiffs. *Id.* ¶ 123.

Pena and Rodriguez stopped plaintiffs just outside the entrance to J.C. Penney and demanded that they return to the store. *Id.* ¶¶ 26, 52, 126. Plaintiffs allege Pena and Rodriguez proceeded to grab Martinez by the arm and grab Martin by the shoulder and force them back into the store. *Id.* ¶ 130.

Plaintiffs were led past customers and employees to the security office in the back of the store. *Id.* ¶ 132. Defendant Bolanos was in the security office when plaintiffs arrived. *Id.* ¶ 132.

They allege that defendants patted them down, emptied the contents of their bags, and required them to strip off layers of their clothing to search for the missing merchandise. *Id.* ¶ 133-34. Plaintiffs contend that they attempted to tell defendants where they had left the merchandise in the store but were detained by defendants for almost an hour. *Id.* ¶ 135.

Eventually the manager, defendant Fingerman, entered the security office and told the plaintiffs that they were free to leave. *Id.* ¶¶ 35, 82, 136.

J.C. Penney's requires a five-step process be followed prior to its loss prevention specialists detaining a suspected shoplifter: (1) shoplifter must enter an area where merchandise is located; (2) suspect must select merchandise from store; (3) suspect must conceal merchandise in some manner; (4) specialist must maintain observation of the suspect and merchandise; (5) suspect must pass all points of sale and exit the store. *Id.* ¶ 124. Plaintiffs allege defendants "grossly deviated from their own policies and failed to follow the five-step process" with respect to plaintiffs by failing to determine what items were missing or concealed prior to detaining them. *Id.* ¶ 125.

4

## III. Burden of Proof

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999). If, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law, summary judgment is warranted. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247–50, 255.

Evidence offered to demonstrate a genuine dispute regarding a material fact must consist of more than "conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. Of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see Del. & Hudson Ry. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue"). "If the non-movant fails to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of the claim, summary judgment is granted." *Guisto v. Stryker Corp.*, 12-CV-2489, 2013 WL 2417685 (E.D.N.Y. June 4, 2013) (*quoting Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir.1992)); *see e.g., Anderson*, 477 U.S. at 248–49.

## IV. Federal Law Section 1981 Claim

### A. Law

To establish an equal benefits claim under 42 U.S.C. § 1981, a plaintiff must allege facts supporting the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and

5

be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).

Section 1981(a) provides in relevant part that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and <u>to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens</u>, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C.A. § 1981 (West) (emphasis added). The Second Circuit has broadly construed section 1981's equal benefit clause as applying to "racially motivated torts that deprive a plaintiff of the equal protection of laws or proceedings for the security of persons and property." *Phillip, supra,* 316 F.3d 291, 297-98 (2d Cir. 2003); *see Jones v. J.C. Penney's Dep't Stores, Inc.*, 03-CV-920A, 2007 WL 1577758 (W.D.N.Y. May 31, 2007) *aff'd sub nom. Jones v. J.C. Penny's Dep't Stores Inc.*, 317 F. App'x 71 (2d Cir. 2009).

### B. Application of Law to Facts

Plaintiffs contend defendants violated section 1981's "equal benefit" clause by subjecting them to false imprisonment, assault and battery because of their race. J.C. Penney argues that the equal benefit claim must be dismissed because plaintiffs cannot demonstrate that they were targeted by J.C. Penney employees because of race.

Plaintiffs' allegations that defendants assaulted, battered, and falsely imprisoned them on suspicion of shoplifting because of the color of their skin fall within the ambit of "laws or proceedings for the security of persons and property" protected by 1981's equal benefit clause. *Phillip*, 316 F.3d at 297-98; *see Jones v. J.C. Penney's Dept. Stores, Inc.*, 2007 WL 1577758, at *18 (W.D.N.Y. May, 31 2007) (holding allegations that store defendants racially discriminated against plaintiff by arresting and prosecuting for shoplifting because of race supported a claim

6

for violation of full and equal benefit of the laws under § 1981 so long as defendants' challenged actions constitute a tort); *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2004) (holding store security officer's decision to stop and search African American customer for shoplifting was racially motivated and supported customer's claim under § 1981 equal benefit clause); *See Pierre v. J.C. Penney Co. Inc.*, 340 F.Supp.2d 308 (E.D.N.Y. 2004) (holding black customer's allegations that retail store security guards accused her of shoplifting, detained her, and attempted to force her to sign a false confession because of her race stated claim under § 1981 equal benefit clause based on alleged violations of state laws against assault and battery and false imprisonment).

Disputed issues of material fact exist with respect to defendants' discriminatory intent in detaining plaintiffs as suspected shoplifters. "A finding of discriminatory intent is a finding of fact, as are findings of discrimination, and causation." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (internal citations omitted). "An invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Id.* A reasonable jury could conclude based on defendants' surveillance of plaintiffs and their alleged failure to conform with store policy that plaintiffs were intentionally discriminated against based on the color of their skin.

## V. State and City Law Claims

### A. Law

#### 1. Election of Remedies

NYSHRL and NYCHRL each contain an election of remedies provision. When a plaintiff pursues a complaint with the State Division on Human Rights regarding an alleged discriminatory practice, they are barred from maintaining a separate action under state law. *See*

N.Y. Exec. Law § 297(9); N.Y. Admin. Code § 8-502; *McPherson v. Plaza Athenee, NYC*, 2012 U.S. Dist. LEXIS 127822 (S.D.N.Y. Sept. 4, 2012) (*citing* N.Y.C. Admin Code § 8-502(a)).

### 2. Race Discrimination

Claims of race discrimination pursuant to the accommodation provisions of NYSHRL and NYCHRL are subject to the same analysis as a claim of race discrimination under section 1981, although those brought under the NYCHRL may be construed more liberally. *See Drayton v. Toys "R" Us Inc.*, 645 F. Supp. 2d 149, 163-64 (S.D.N.Y. 2009); N.Y.C. Admin. Code § 8-130; *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 67-68 (1st Dep't 2009) ("The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof . . . .").

### 3. Sex and Gender Discrimination

Unlike section 1981, the accommodation provisions of NYSHRL and NYCHRL protect against discrimination on the basis of sex and gender respectively.

The public accommodation provision of the NYSHRL protects against discrimination "because of age, race, creed, color, national origin, sexual orientation, military status, sex, marital status, or disability." N.Y. Exec. Law § 291(2).

The NSCHRL public accommodation provision protects against discrimination on the basis of "actual or perceived race, creed, color, national origin, age, gender, disability, marital status, sexual orientation or alienage or citizenship status." N.Y.C. Admin. Code § 107(4)(a). "The term 'gender' shall include actual or perceived sex and shall also include a person's gender identity, self-image, appearance, behavior or expression, whether or not that gender identity, self-image, appearance, behavior or expression is different from that traditionally associated with the legal sex assigned to that person at birth." N.Y.C. Admin. Code § 8-102.

## B. Application of Law to Facts

Plaintiffs bring claims under the accommodation provisions of NYSHRL and NYCHRL for discrimination based on sex/gender and on race.

They filed a complaint with the State Division on Human Rights for the same alleged acts of discriminatory conduct by defendants as brought in the instant action seeking money damages. *See* DHR Compl., April 15, 2013, ECF No. 33, Ex. F. The instant action, however, was filed before any complaint with the division was filed. *See* Compl., April 8, 2013, ECF No. 1. The election of remedies provisions in NYSHRL and NYCHRL do not apply to plaintiffs who initiate their suit prior to asserting a claim with the division. Plaintiffs have not violated the election of remedies provisions and are not foreclosed from bringing this suit.

With respect to their sex and gender claims, plaintiffs are in the unusual position of being females alleging that they were discriminated against for being male. Their claims are premised on allegations that they were discriminated against because of their perceived male sex, rather than their actual female sex.

Plaintiffs state cognizable gender discrimination claims under NYCHRL's broad protections against discrimination based on "actual or perceived" gender, where gender is defined as "actual or perceived sex." N.Y. Exec. Law § 291(2).

Plaintiffs also state valid claims for sex discrimination under NYSHRL. Unlike the NYCHRL, the language of the accommodation provision in the NYSHRL does not explicitly provide protection for "actual or perceived" sex. It simply prohibits discrimination "because of" sex. Since the statute is to be "construed liberally" to accomplish its purpose, defendants should not be permitted to avoid responsibility for some discriminatory acts motivated by sex and not others. N.Y. Exec. Law § 290. Discrimination based on an individual's perceived sex is

9

discrimination "because of sex" in the same way that discrimination based on an individual's actual sex is.

For the reasons stated above, *see supra* Part IV., material issues of fact exist as to plaintiffs' discriminatory intent in detaining plaintiffs. A reasonable jury could conclude that plaintiffs were intentionally discriminated against based on the color of their skin and their perceived male sex.

## VI. Conclusion

Defendants' motion for summary judgment is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 9, 2014
Brooklyn, New York

10